Eastern District of Kentucky
F I L E D

JUN 3 0 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-425-GWU

BARBARA J. BUNDY,                                                    PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6.     See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.    If no, proceed to Step 7.    See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Bundy

> First, we examine whether there is objective medical evidence of an
> underlying medical condition.  If there is, we then examine:  (1)
> whether objective medical evidence confirms the severity of the alleged
> pain arising from the condition; or (2) whether the objectively
> established medical condition is of such a severity that it can
> reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.

1987).  Further, a failure to seek treatment for a period of time may be a factor to be

considered against the plaintiff, Hale v. Secretary of Health and Human Services,

816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Bundy

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Bundy

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency

6

Bundy

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Barbara J. Bundy, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic obstructive pulmonary disease, an adjustment disorder with depressed mood, nicotine dependence, "rule out" anxiety disorder due to hypertension, "rule out" panic disorder without agoraphobia, acute thoracolumbar strain, a history of bronchitis, emphysema, controlled hypertension, and complaints of exertional shortness of breath, dyspnea, intermittent chest pain, coughing, back and bilateral leg pain, and sleep disturbances. (Tr. 24-5). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. Bundy retained the residual functional capacity to return to her past relevant work as an assembler and press operator and, therefore, was not entitled to benefits. (Tr. 25-8).

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she

7

Bundy

were capable of "light" level exertion, and also had the following non-exertional impairments. (Tr. 417). She: (1) could have no exposure to dust, fumes, smoke, chemicals, noxious gases, or extreme changes in temperature or humidity; (2) would have a "limited but satisfactory" ability to follow work rules, deal with the public, maintain attention and concentration, handle detailed instructions, demonstrate reliability, or respond to changes in the work setting; and (3) was limited to work that involved simple, non-detailed tasks, where public and co-worker contact was casual and infrequent, where supervision was direct and non-confrontational, and where changes in the work force were infrequent and gradually introduced. (Tr. 417-18). The VE responded that with these restrictions, the plaintiff could return to her past relevant work as an assembler and press operator. (Tr. 418). In the alternative, the VE testified that there were other unskilled jobs which the plaintiff could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 418-19).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

In addition to breathing problems, the plaintiff alleged disability due to anxiety attacks, which she said could occur at anytime. (Tr. 79). Her family physician, Dr. Ray Hays, diagnosed probable panic disorder and prescribed Klonopin (Tr. 170),

Bundy

and later changed his diagnosis to "anxiety neurosis" as the plaintiff continued to have panic attacks and crying episodes (e.g., Tr. 166). He later added Paxil for a component of depression. (Id.). In May 2004, Dr. Hays noted that medications were not controlling the plaintiff's "severe" anxiety neurosis and she was having multiple panic attacks. (Tr. 374).

In terms of actual functional restrictions related to this problem, the only examining source to give an opinion was Dr. Kenneth Starkey, a psychologist, who examined the plaintiff in June, 2003, and diagnosed a number of problems including an anxiety disorder, an adjustment disorder with depressed mood, nicotine dependence, "rule out" anxiety disorder due to hypertension and "rule out" panic disorder without agoraphobia. (Tr. 190). Dr. Starkey stated that with psychiatric and psychological treatment, including weekly psychotherapy, Mrs. Bundy could experience additional improvement of her prevailing symptoms in six months that would allow her to be rendered psychologically appropriate for vocational training or placement at that time. (Id.). Without such care, her prognosis was guarded. (Id.). She was able to understand and remember simple,1-2 step instructions without significant difficulty but was "likely" to respond by becoming somewhat anxious and depressed under the pressures found in most day-to-day work settings. (Tr. 191).

A state agency psychologist who reviewed the record interpreted Dr. Starkey's report as indicating that the plaintiff was "able to understand and remember simple

9

Bundy

instructions without significant difficulty and she *may* have mild to moderate difficultly handling the stresses of day-to-day work stresses and sustaining attention to complete tasks in a timely manner." (Tr. 221)(emphasis added). Actually, Dr. Starkey had said that the plaintiff would "likely" respond in this way, not that she "may." In any case, the state agency psychologist, Dr. H. Thompson Prout, prepared a mental residual functional capacity assessment form indicating that the plaintiff was "moderately limited" in her ability to handle detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting. (Tr. 219-20). Another state agency reviewer, Dr. Jay Athy, concurred without adding any new commentary. (Tr. 248-51).

As can be seen, the ALJ's hypothetical question significantly modified the restrictions given by the state agency sources in several respects. First, with no explanation, the term "moderately limited" was replaced by "limited but satisfactory." Second, the specific restrictions were all restated in language that was not used in the agency's own forms, to the extent that a different meaning was imparted.

More important, however, was the fact that both the state agency reviewers and the ALJ apparently did not discuss Dr. Starkey's conclusion that the plaintiff

10

Bundy

would need at least six months of therapy before she "could" (not even would) be rendered capable of vocational placement. Since Dr. Starkey was the only examining source to give such an opinion, and since there is significant evidence in the treatment notes of the plaintiff's family physician that her anxiety neurosis and/or panic attacks were a real problem, a remand will be required in order to obtain additional evidence regarding the plaintiff's ability to engage in substantial gainful activity.

The decision will be remanded for further consideration.

This the ___3 0___ day of June, 2006.

G. WIX UNTHANK
SENIOR JUDGE

11